IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILLY C. STANLEY ) | |
| ) | |
| Petitioner, ) | C.A. No. 06-82 Erie |
| ) | |
| v. ) | |
| ) | District Judge McLaughlin |
| MARILYN BROOKS, et al., ) | Magistrate Judge Baxter |
| ) | |
| Respondents. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Petitioner, Billy C. Stanley, be dismissed and that a certificate of appealability be denied.

### II.   REPORT

Stanley is a state prisoner currently incarcerated at the State Correctional Institution located in Albion, Pennsylvania. He has filed a habeas petition pursuant to 28 U.S.C. § 2254. In the petition, he alleges that his constitutional rights were violated because he was denied effective counsel during his parole revocation proceedings. He further argues that he was denied his right to appointment of counsel during his appeals.

#### A.   Relevant Factual and Procedural History

In September 2002, Stanley appeared before the Court of Common Pleas of Erie County and pleaded guilty to two counts of corruption of minors. The court sentenced him to a term of imprisonment of not less than 21 nor more than 42 months. (Doc. 8, Exs. 1-5). His minimum term of sentence was set at June 2, 2004, and his maximum term was set at March 2, 2006. (Doc. 8, Exs. 1-2).

In April 2004, the Pennsylvania Board of Probation and Parole (the "Board") granted Stanley's request for parole upon expiration of his minimum sentence. (Doc. 8, Ex. 6). He was

1

released from custody and placed on parole in June 2004. (Doc. 8, Ex. 7).

While on parole, Stanley was arrested on new state charges. Consequently, on or around August 8, 2004, the Board lodged a detainer against him. (Doc. 8, Ex. 8). However, it waited upon the disposition of Stanley's new charges before it acted further. (Doc. 8, Exs. 9 & 14). On April 1, 2005, a jury impaneled by the Court of Common Pleas of Erie County found Stanley guilty of burglary, assault, vandalism, recklessly endangering another person, and disorderly conduct. (Doc. 8, Ex. 10). The court sentenced him to a term of imprisonment of not less than 121 nor more than 300 months. (Doc. 8, Ex. 11).

On May 24, 2005, after Stanley was convicted and sentenced on the new charges, the Board conducted a parole revocation hearing. (Doc. 8, Ex. 13). Public Defender Garrett Taylor, Esquire, represented him. At the hearing, the certified copy of the court record establishing that Stanley had been convicted and sentenced on multiple state charges was received into evidence. Stanley also acknowledged his new convictions. In his defense, he offered that he was appealing the judgment on his new convictions. (Id.).

On July 14, 2005, the Board issued its decision notifying Stanley that he was being recommitted as a convicted parole violator because his new convictions violated the terms and conditions of his parole. (Doc. 8, Ex. 14). The Board ordered that he be recommitted for 15 months. (Id.). His recommitment as a convicted parole violator resulted in the loss of all time at liberty while on parole. Accordingly, his parole violation maximum date was recalculated to February 21, 2007. (Doc. 8, Ex. 14-16). As a result of the Board's decision, Stanley did not begin to serve the judgment of sentence on his new convictions until the recent expiration of his parole maximum date.[1]

On August 15, 2005, Stanley filed a pro se petition for administrative review of the Board's decision. (Doc. 8, Ex. 17). He contended that the Board erred in computing his parole violation

---

[1] Because the Board's decision impacted the date upon which Stanley began serving the judgment of sentence on his new convictions, the instant petition is not moot, even though Stanley has completed service of his sentence on his parole violation.

2

maximum sentence.  (Id.).  The Board denied his petition for administrative review on or around September 9, 2005.  (Doc. 8, Ex. 18).  Stanley filed an amended pro se petition for administrative review, which the Board denied because it had already ruled upon and denied his initial petition.  (Doc. 8, Ex. 19).

On October 17, 2005, Stanley filed a pro se petition for review with the Commonwealth Court of Pennsylvania and once again alleged that the Board erred in calculating his parole violation maximum sentence.  (Doc. 8, Ex. A to Ex. 21).  On January 24, 2006, the Commonwealth Court denied Stanley's petition for review because it was untimely.  (Doc. 8, Ex. C to Ex. 21).

Next, Stanley submitted a pro se petition for allowance of appeal with the Pennsylvania Supreme Court.  (Doc. 8, Ex. 21).  Therein, he contended that the Commonwealth Court erred in dismissing his appeal.  He also argued that state law required that he be appointed counsel and that his case should be remanded to the Commonwealth Court for appointment of counsel and the reinstatement of his appellate rights.  (Doc. 8, Ex. 21 at 16-19).  On March 17, 2006, the Pennsylvania Supreme Court's Office of Prothonotary returned Stanley's submission, stating that it could not accept it because is was untimely.  (Doc. 8, Ex. 22).

On or around April 5, 2006, Stanley filed his habeas corpus petition with this court.  (Doc. 1; see also Reply, Doc. 10).  He argues that Attorney Taylor provided him with constitutionally ineffective assistance of counsel.  He contends that he asked Attorney Taylor to file an administrative appeal of the Board's decision, and that after his pro se administrative appeal was denied, he instructed counsel to file an appeal to the Commonwealth Court.  He claims that Attorney Taylor failed to respond to any of his requests.  Finally, he argues that, because Attorney Taylor abandoned representation of him, he was entitled to appointment of counsel, and that the deprivation of such counsel violated his constitutional rights.

### B.     Discussion
#### 1.     Stanley's Claims Are Procedurally Defaulted

Respondents first contend that Stanley did not properly present his claims, or "exhaust" them, before the Pennsylvania courts, and he therefore has committed insurmountable procedural

3

default. The court agrees.

The federal habeas statute "requires that prisoners exhaust their claims in state court before seeking relief in federal courts." Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004) (citing 28 U.S.C. § 2254(b)(1)(A)). In this case, Stanley could have raised the claims at issue here in a properly filed petition for review with the Commonwealth Court. See e.g., Worthington v. Bd. of Prob. & Parole, 784 A.2d 275 (Commw.Ct. 2001). This he failed to do. His petition for review was untimely and, notably, in that untimely petition (and in his pro se administrative appeal) he failed to raise any issue with regard to counsel's representation or the Commonwealth's purported failure to provide him with counsel. (Doc. 8, Ex. 18 & Ex. A to Ex. 21).

Moreover, it also appears that Stanley could have raised the instant claims in a timely motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.CONS.STAT. § 9541 *et seq.*; however, he failed to file such a motion. See also Commonwealth v. Cappello, 823 A.2d 936 (Pa.Super.Ct. 2003). Stanley arguably raised the claims at issue in his submission to the Pennsylvania Supreme Court (Doc. 8, Ex. 21), but that submission was not accepted for filing because it was untimely. In any event, a claim raised for the first time before the Pennsylvania Supreme Court will not satisfy the exhaustion requirement. O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999); see also Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

Generally, a district court should require that a state prisoner return to state court for review of unexhausted claims. See, e.g., Crews v. Horn, 360 F.3d 146 (3d Cir. 2004). However, a federal court may excuse a petitioner's failure to exhaust in cases where the court can confidently predict that the state courts would not entertain review of the claims because such review would be barred by a state procedural rule, such as a statute of limitations. Slutzker, 393 F.3d at 380; Whitney v. Horn, 280 F.3d 240, 249-53 (3d Cir. 2002); Lines v. Larkins, 208 F.3d 153, 162-66 (3d Cir. 2000). That is the case here, because any PCRA motion that Stanley might now attempt to file would be untimely and unreviewable in the Pennsylvania courts. Under the PCRA, a petitioner has one year from the date the Board revoked his parole to file a motion asserting that errors of constitutional magnitude occurred during his parole revocation proceeding. 42 PA.CONS.STAT. § 9545(b)(3); Cappello, 823 A.2d at 939-41. In this case, the Board issued its decision on July 14, 2005, and it

was mailed to Stanley on August 3, 2005. It cannot be disputed that he received the Board's decision before August 15, 2005, because on that date he filed his pro se petition for administrative review. (Doc. 8, Ex. 17). Thus, providing Stanley with all benefit of the doubt, he had until mid-August 2006 to file a PCRA motion challenging his parole revocation proceedings. Accordingly, any PCRA motion that he now would attempt to file would be deemed untimely by the state courts.

Because this court can confidently predict that any PCRA motion that Stanley would now attempt to file would be denied as untimely, requiring him to exhaust his claims would be "futile." Slutzker, 393 F.3d at 380; Whitney, 280 F.3d at 250; Lines, 208 F.3d at 162. Importantly, however, when a petitioner cannot exhaust his claims due to futility, those claims are considered "procedurally defaulted" in federal habeas court. Id. at 380; Whitney, 280 F.3d at 252; Lines, 208 F.3d at 166. The procedural default doctrine applies to bar federal habeas review when a state court has declined or would decline "to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 380-81 & 381 n.6 (internal quotation and citation omitted). "The *raison d'être* for the doctrine lies in the fact that a state judgment based on procedural default rests on independent and adequate state grounds." Id. at 381 (citations omitted).

Stanley acknowledges that his claims are procedurally defaulted, but he contends that this court may review the defaulted claims on the merits because he can satisfy the "cause and prejudice" exception to the procedural default doctrine, as set forth in Coleman v. Thompson, 501 U.S. 722 (1991).[2] (Doc. 10 at 7-15). In Coleman, the Supreme Court instructed that a federal court may review the merits of a procedurally defaulted claim if the petitioner establishes (1) "cause" for the default by demonstrating that some objective factor external to the defense impeded the petitioner's efforts to comply with the State's procedural rule, and, (2) resulting prejudice. 501

---

[2] Federal courts may also review the merits of procedurally defaulted claims if the petitioner demonstrates that a fundamental miscarriage of justice will result if the court does not review the claims. Coleman, 501 U.S. at 750-51. Stanley does not argue that he has satisfied this exception, and it only applies to a petitioner who demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Murray v. Carrier, 477 U.S. 478, 496 (1986); Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). Actual innocence means factual innocence, not legal insufficiency, and the miscarriage of justice exception applies only in extraordinary cases. It is not applicable to this case.

U.S. at 753; see also Murray v. Carrier, 477 U.S. 478, 494 (1986). Stanley has not directed this court to any circumstance that prevented him from raising the claims at issue in a timely pro se petition for review to the Commonwealth Court or in a PCRA motion. Accordingly, he has not sustained his burden of showing "cause" for his default.

### 2. Stanley's Claims Are Not Cognizable In Habeas Corpus

Even if Stanley had not procedurally defaulted his claims, he would not be entitled to federal habeas corpus relief. In order to obtain such relief, a petitioner must show that his federal constitutional rights were violated. 28 U.S.C. §§ 2241(c)(3); 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); e.g, Johnson v. Rosemeyer, 117 F.3d 104, 109-12 (3d Cir. 1997). Accordingly, to the extent that Stanley is arguing that the Commonwealth violated state law when it purportedly failed to supply him with effective assistance of counsel during his parole revocation proceedings, that claim is not cognizable here. Claims attacking a state court's application of its own law do not state a basis for a federal habeas claim. Estelle, 502 U.S. at 67-68.

Moreover, Stanley has not demonstrated that he had a federal constitutional right to counsel during his parole revocation proceedings. A federal constitutional claim to the right to counsel in the parole revocation context is governed by the Due Process Clause of the Fourteenth Amendment. Morrissey v. Brewer, 408 U.S. 471, 485 (1972); Gagnon v. Scarpelli, 411 U.S. 778 (1973).[3] The Supreme Court has held that a parolee is not entitled to the "full panoply of rights" that apply in a criminal prosecution, and that a parole revocation proceeding must meet only the "minimum requirements of due process." Morrissey, 408 U.S. at 480-89; Gagnon, 411 U.S. at

---

[3]

The Sixth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have Assistance of Counsel for his defense." U.S. Const. amend. VI. Because a parole revocation proceeding is not a "criminal prosecution," there is no Sixth Amendment right to counsel at a parole revocation hearing. See e.g., Morrissey, 408 U.S. at 480 (holding that the rights guaranteed by the Sixth Amendment in "criminal prosecutions" do not apply in a parole revocation proceeding, and declaring that "[p]arole arises after the end of the criminal prosecution" and so is not part of the criminal prosecution); Gagnon, 411 U.S. at 783-90; United States v. Aspinall, 389 F.3d 332, 342 (2d Cir. 2004) (holding that the Sixth Amendment applies only to "criminal prosecutions" and "it has long been established that probation revocation, like parole revocation, is not a stage of a criminal prosecution") (internal quotations omitted), abrogated on other grounds as recognized in, United States v. Fleming, 397 F.3d 95, 99 n. 5 (2d Cir. 2005).

781-82.  The Supreme Court has further held that the states have no obligation to provide counsel for indigents in all parole or probation revocation cases, reasoning as follows:

> In most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him.  And while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating evidence of this kind is often not susceptible to proof or is so simple as not to require either investigation or exposition by counsel.

Gagnon, 411 U.S. at 787.  Thus, in Gagnon, the Supreme Court held that the federal constitutional right to counsel is determined on a "case-by-case basis."  Id. at 787-90.  The Supreme Court further noted that: "[T]he presence and participation of counsel will probably be both undesirable and *constitutionally unnecessary* in most revocation hearings[.]"  Id. at 790 (emphasis added).

In adopting a case-by-case approach in determining whether counsel is constitutionally required, the Supreme Court instructed that counsel generally should be afforded in two situations: (1) when the parolee claims that he has not committed the alleged violation of which he is accused; or, (2) even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.  Id.

Neither of the situations the Supreme Court identified in Gagnon was present in Stanley's case.  At the parole revocation hearing, uncontested evidence of his parole violations (the criminal records regarding his new convictions) was admitted into evidence and Stanley acknowledged that he had recently been convicted of those new crimes.  There is nothing in the record before this court that would suggest that there was any issue during the revocation process that was so complex or difficult that the Due Process Clause required that he be provided with counsel.  Id.  As a result, Stanley had no federal constitutional right to counsel during his parole revocation proceedings, and his claims that he received constitutionally ineffective assistance during that proceeding and that his right to the appointment of counsel was violated because he proceeded pro se during his appeal, must fail.  Id.

In conclusion, because the claims Stanley raises in his petition for writ of habeas corpus are procedurally defaulted, and because his claims are not cognizable in federal habeas corpus, his

7

petition should be dismissed with prejudice.

### C. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." In Slack v. McDaniel, 529 U.S. 473, 474 (2000), the Supreme Court stated that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Applying this standard here, jurists of reason would not find it debatable whether the claims raised in Stanley's Petition for Writ of Habeas Corpus are procedurally defaulted, or that he has made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability should be denied.

## III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that the instant petition for writ of habeas corpus be dismissed and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

|  |  |
|---|---|
|  | /s/Susan Paradise Baxter |
|  | SUSAN PARADISE BAXTER |
| Dated: March 21, 2007 | Chief U.S. Magistrate Judge |